MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS, v. A. B. GRAHAM.

No. 772.

1. **Obstructing Water Course—Continuing Injury—Damages Estimated From What Date.**

Where the injury to land resulting from the erection of a dam by a railway company is permanent and continuous, the damages therefor must be estimated on the market value of the land as at the time the dam was constructed, and not as at the date of trial.

**2.  Same—Limitations Run From What Date.**

Where the erection of a dam creates a permanent injury to adjacent land from the time of its construction, limitation in an action for such injury will run from the time when the dam was built.

**3.  Same—Limitations Against Vendee of Railway Corporation.**

While an action against the receivers of a railway corporation who subsequently returned the road back to the corporation, is to be regarded as an action against the corporation, so far as the statute of limitations is concerned, where such corporation is afterwards made a party, yet the doctrine will not be extended to apply to a vendee of such corporation subsequently purchasing the road and assuming the liabilities of the vendor corporation and of the receivers.

**4.  Limitations—Burden of Proof—Record.**

It devolves upon a defendant pleading limitation to substantiate the plea, and such plea will not be sustained on appeal upon the ground that defendant had not been made a party defendant by amendment until after the action was barred as against it, where the record indicates that such defendant, although misdescribed by name in the amendment, had been duly served through its agent and had answered prior to the bar of the statute.

APPEAL from Johnson. Tried below before HON. J. M. HALL.

*Stedman & Thompson,* for appellant.—1.  Where a construction, permanent in its nature, operates to injure adjacent land the damage is the decrease in value of the land, measured by its value before and just after such construction.  Railway v. Schofield, 72 Texas, 496; Lisle v. Railway, 73 Texas, 95; Railway v. Chaffin, 60 Texas, 554; Van Peet v. City, 42 Ia., 34; Adams v. Hastings, 18 Minn., 264; Cumberland v. Hitchey, 65 Me., 141; Troy v. Railway, 23 N. H., 102; 3 Suth. Dam., 414; Wood on Lim., 371.

2.  In order to hold the M., K. & T. Railway Company, of Texas, liable for the acts of the receivers of the Missouri, Kansas & Texas Railway Company, suit should have been brought at least two years after it assumed such liability.  Harrison v. Reager, 64 Texas, 90; Stanley v. Schully, 85 Texas, 353.

*Crane & Ramsey,* for appellee.—1.  Where the acts of a railway company complained of, constitute a nuisance, and the injury to the land owner is continued and continuous, and exists to its fullest extent at the date of the trial, the measure of damages is the difference between the value of the land at the date of the trial, burdened with such nuisance, and the value of same if said improper dam, causing the nuisance, had not been constructed.  3 Suth. Dam., 403, 404; Railway v. Davis, 29 S. W. Rep., 483; Railway v. Rosenthal, 79 Texas, 328; Cumberland v. Hitchings, 65 Me., 140; Seely v. Alden, 65 Penn., 302; O'Reilly v. McChesner, 3 Lans., 278, affirmed 49 N. Y., 672.

2.  The injury to appellee's land, caused by the construction of the dam in question by the receivers, and its continuation by appellant, such damages being continuing and continuous, and being increased and evidenced by occurrences taking place since the dam was built, and such damages not being complete or permanent at the time the obstruction in question was built, limitation does not run from the date of the build-

ing of the dam, and recovery can be had for the entire injury, as it existed at the date of the trial. Railway v. Davis, 29 S. W., 483; Railway v. Anderson, 79 Texas, 427; Clark v. Dyer, 81 Texas, 343; 1 Wood, Lim. (2 ed.), sec. 180; Plumer v. Harper, 3 N. H., 384; Holly v. McCall, 37 Ala., 20.

JAMES, CHIEF JUSTICE.—In 1889, Cross and Eddy, the receivers of the Missouri, Kansas & Texas Railway Company constructed a dam across Village Creek, upon the right of way of the railroad, near the eastern line of the land of A. B. Graham. The dam was a substantial and permanent structure of masonry and cement, and replaced a smaller dam that was there before, the purpose evidently being to keep water of said creek from injuring the road. The effect of the structure upon the land of plaintiff was, according to both the allegations of the petition and the testimony, a continuing injury thereto, by reason of its causing water to overflow and submerge a considerable portion of plaintiff's land, rendering the crossing of the creek boggy and dangerous to stock, and causing a large area of stagnant water to stand on the land, making the place unhealthy.

The allegation was that the dam as originally constructed was and has remained a continuous and continuing nuisance; and the damages asked was $2500, the depreciation in value of the tract of land resulting from the conditions caused by the dam.

The first question we shall consider is the measure of damages. The rule in this respect given in the charge to the jury was the difference, if any, between the market value of the land with the dam on said creek, and the market value of the land with the dam removed; such values to be determined as of the date of the trial. Appellant contends that the jury should have been directed to determine the difference in these values with reference to the time the dam was constructed.

The character of the structure was not one which would or would not cause injury to plaintiff's land, according to circumstances or contingencies. The well settled rule upon this subject in this State is, that if the structure is such as to occasion damage only at times, the injured party may sue separately for each injury he receives; but if the damage produced is continuous and permanent in its nature, he may and must obtain the redress in one action. Railway v. Anderson, 79 Texas, 427; Railway v. Davis, 29 S. W. Rep., 483.

As alleged and proved in this case, the dam worked a constant injury to the land from the beginning. It created a permanent status of injury to the freehold from the time of its construction. As a result, limitations will run on such a demand from the time the injury was instituted. Lyles v. Railway, 73 Texas, 95; and as a further and necessary result, it seems to us, the cause of action for the entire damage having thus accrued, this fixes the time with reference to which the damage should be computed. Railway v. Schofield, 72 Texas, 499; Rosenthal v. Railway, 79 Texas, 327; Lyles v. Railway, 73 Texas, 95.

The authorities cited by appellee have reference to the rule which obtains generally elsewhere, that the past and probable future injuries should be considered. As we read the opinion of the Supreme Court in Rosenthal v. Railway, this rule is not adopted as the most certain and satisfactory mode of arriving at compensation in this class of cases. It is there held that the resulting depreciation is the safest measure of compensation. In applying this rule, suppose the injury results in a total destruction in value of the property, would it be asserted that the value could be taken as of a subsequent time, say years later? We think not. The rule, as the cases show, is intended to apply as well to cases of partial destruction of the freehold. To allow the assessment as of the time of trial would make it possible, in all cases where land in the same locality has materially increased in value, for a recovery for partial damages, of a sum greater than the full value of the land at the date the injury was instituted.

There is in the third amended original petition an allegation that since appellant took charge of the railway it has permitted the dam to remain in said condition, knowing of its damage to plaintiff's property. If this were the sole ground upon which plaintiff undertook to hold defendant liable (which it is not), it would have been necessary, consistently with the views we have expressed, to charge the jury, as requested by defendant, that the action was barred. The defendant, if held, must be so by reason of the act of the receivers and its assumption of liability for their act. The allegation referred to has no effect upon the rule for determining the damage.

There is evidence that the market value of land in that locality had greatly depreciated since the dam was built, and testimony to the effect that the plaintiff's land had been injured to the extent of half of its original value, hence the action of the court in allowing the damage to be assessed as of the date of the trial was not only error, but one by which appellant may have been prejudiced. This conclusion necessitates a reversal of the judgment.

It is proper that we should notice another assignment, which relates to limitations. It appears that on July 1, 1891, the receivers, under whose direction the dam was built, were discharged and on that date the property turned over to the owner, the Missouri, Kansas & Texas Railway Co. This corporation, on January 1, 1892, sold and transferred its lines of railway in Texas to another corporation which had been recently theretofore incorporated in Texas under the name of the Missouri, Kansas & Texas Railway Co. of Texas. By virtue of an act of our legislature, this corporation was permitted to purchase said lines, and it was admitted that this company had become liable for all debts and demands against the Kansas corporation, or the receivers.

The suit was filed against the receivers in October, 1890. In April, 1893, plaintiff filed his first amended original petition, alleging the discharge of the receivers, and alleged substantially the same cause of action against the Missouri, Kansas & Texas Railway Co., "a corporation duly

organized and existing as such, and whose local agent in Johnson county is G. W. Bowles," and asked that said company be cited. It is observed from the testimony that when this amendment was filed, the corporation operating the railway lines was the Missouri, Kansas & Texas Railway Co. of Texas, and the original company the Missouri, Kansas & Texas Railway Co., had long since (since January 1, 1892) ceased to operate the lines in Texas.

A second amended original petition was filed on January 4, 1894, wherein the defendant is designated the Missouri, Kansas & Texas Railway Co. of Texas, alleging, besides the cause of action, the incorporation of this company in Texas, and its liability for the debts of the original corporation and of the receivers, and in its prayer for judgment states that the defendant had answered.

A third (and last) amended original petition was filed May 7, 1894, designating the defendant as the Missouri, Kansas & Texas Railway Co. of Texas, and, among other things, it alleged that the amended petition, filed April 14, 1893, was against the Missouri, Kansas & Texas Railway Co. of Texas; that in such petition the defendant is styled merely as the "Missouri, Kansas & Texas Railway Co., a corporation duly organized and existing as such," and avers that the corporation therein in fact sued was the identical defendant herein, the Missouri, Kansas & Texas Railway Co. of Texas, upon which company's agent the service was had.

Appellant asserts that it clearly appears it was not sued until January 4, 1894, and that, it having become liable on January 1, 1892, the action against it was barred by the lapse of two years therefrom.

The Supreme Court seems to have held in Railway v. Huffman, 83 Texas, 289, that the suit against the receivers was practically, so far as the statute of limitation is concerned, a suit against the corporation, where the latter is afterwards made a party.

But this doctrine cannot by any reasoning be extended to apply to a vendee of the original corporation. The action against the appellant was barred on January 1, 1894, unless it had in fact been made a party defendant by that date. It devolved on appellant to substantiate this plea, and it contends that this has been done by the fact that in the amendment of January 4, 1894, occurs the first mention of "the Missouri, Kansas & Texas Railway Co. of Texas," the former pleadings having been against the Missouri, Kansas & Texas Railway Co.

All of appellant's pleadings are not in the record. The first amended original petition was filed May 7, 1894; it refers to a former pleading, the date of filing of which is not ascertainable. The Missouri, Kansas & Texas Railway Co. does not appear to have ever filed a pleading in the case. By the amended petitions of January 4, 1894, and May 7, 1894, no citations were asked for, and it is therefore very probable that the appellant appeared in the case upon a citation issued under the petition filed April 4, 1893, and prior to the expiration of two years after its liability accrued. The prayer to the amended petition, filed January 4, 1894, states that the defendant, the Missouri, Kansas & Texas Rail-

way Co. of Texas had answered. Upon the record before us, we would not be disposed to hold that the plea of limitations should prevail.

The other alleged errors need not be considered, as they are not likely to occur again.

*Reversed and remanded.*

Delivered December 18, 1895.